[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff Father instituted this action by complaint dated June 29, 1999, seeking custody of and support for the minor children. The case was referred to Family Relations for a custody evaluation on January 29, 2001. The matter was referred to the Regional Family Trial Docket on April 30, 2002 and the referral was approved on May 29, 2002. On June 10, 2002 the Waterbury court made a finding of paternity. The case was heard by this court on October 7, 2002.
FINDINGS OF FACT:
The Plaintiff Father and Defendant Mother began their relationship in the spring of 1995 (Defendant's Exhibit K). Two children were born to the parties, Richard Witherspoon III, date of birth January 10, 1996 and Marcus Witherspoon, date of birth November 5, 1997. Ms. Micci has a daughter, Laura McCormack, date of birth September 16, 1988, from a previous relationship. The Defendant, Mother became pregnant shortly after the couple's relationship began and moved in with the Plaintiff, Father in Naugatuck, CT.
Ms. Micci purchased a home in Watertown, CT approximately one year later where she and the minor children still reside.
The parties both describe a tumultuous relationship encompassing three periods of separation due to domestic violence and ensuing protective orders or temporary restraining orders. The final separation was in the spring of 1999 at which time Mr. Witherspoon petitioned for physical custody of the minor children. On August 2, 1999 the parties entered into a stipulation whereby they shared parenting of the minor children with Father having the boys on an alternating week schedule of Wednesday at 6:00 p.m. to Friday at 6:00 p.m. and Wednesday at 6:00 p.m. to Saturday at 6:00 p.m. This schedule has been followed to the present date. CT Page 13278
Mr. Witherspoon presently works at the Southbury Training School as a MRW1 (Mental Retardation Worker #1) and has been employed in that capacity for approximately 8 years. Mr. Witherspoon's schedule requires him to work on an 8-week cycle as follows: 5 weeks working Sunday-Wednesday 6:30 a.m. to 2:30 p.m. and 3 weeks from Saturday to Wednesday the same hours. He always has Thursday and Friday off plus 5 Saturdays off during the 8-week cycle.
The State of Connecticut initially employed Ms. Micci at the Southbury Training School as a MRW2 and later as a Staff Nurse. She obtained her R.N. degree in 1994 and is currently employed as a Clinical Nurse 2. Ms. Micci has adjusted her schedule so she arrives late for work (7:30 a.m. to 3:00 p.m.) on the days she drops the children off at school/nursery school. She is required to work every third weekend and when doing so she has Friday and Monday off. Ms. Micci explained that despite receiving a promotion and raise she took a pay cut to spend more time with her children and works 35 hours per week instead of 40 hours.
Ms. Micci reported several additional incidents of threatening behavior on the part of Mr. Witherspoon since the date of his last arrest on March 25, 1998: The first was the subject of a TRO, which was denied after a hearing. However, the application for a TRO led to a court order dated November 13, 2000 requiring Mr. Witherspoon to pick the children up curbside. Additionally, Ms. Micci reported that the Plaintiff had harassed her at work calling her repeatedly in April 2001. She alleged Mr. Witherspoon had appeared at his son's baseball practice under the influence of alcohol, waving a white flag and refused to leave until a police car came into the area. In May 2002 a verbal dispute erupted between Ms. Micci's fiance and Mr. Witherspoon when he dropped the children off after visitation. The Plaintiff threatened violence against the fiance if he ever put a hand on his children. During the past summer, when Ms. Micci was attempting to talk to Mr. Witherspoon he allegedly nearly ran over her foot while backing out of the driveway.
One of the Plaintiff's major complaints was his perception that the Defendant does not keep him informed of his children's health, education and welfare. Mr. Witherspoon complained that Ms. Micci had failed to inform him of her registration of the oldest child for school in Watertown. Mr. Witherspoon introduced several exhibits that he claimed proved she had made no effort to communicate with him (see Plaintiff's Exhibits 2, 3 4). The documents introduced by Mr. Witherspoon are contracts for the payment of tuition for extended day kindergarten which students are assigned to on a lottery basis. Ms. Micci explained that she was anxious to return the document to the school to secure her son a spot in the full day program. Additionally, she had no authority to sign Mr. CT Page 13279 Witherspoon's name to a contract binding him to pay tuition. Mr. Witherspoon, to his credit did ultimately pay 1/2 the cost of the extended day tuition.
Ms. Micci testified she has made numerous attempts to talk to Mr. Witherspoon about the boys during the curbside drop off and pick up. She indicates Mr. Witherspoon refuses to engage her in conversation regarding issues such as homework that needs to be completed or medication that has been given or is needed. Family Relations Counselor, Christopher Hadad, testified that conversations of this nature (regarding homework, recent illness, medication dosage and the like) were appropriate. Mr. Hadad did agree that issues such as the child's school enrollment would be more appropriate when the children were not present.
Mr. Witherspoon is currently living with his mother in Naugatuck, CT, having lost the home he owned in Naugatuck, CT as a result of a foreclosure/bankruptcy. When the family relations report was completed on November 1, 2001 (Defendant's Exhibit K) Mr. Witherspoon was living in his own home in Naugatuck, CT, and planned on moving in with his mother when he was forced to move as a result of his bankruptcy. As of the date of the trial he was still living with his mother. The children's Guardian Ad Litem, Attorney Jeffrey Weisman, and the Family Relations Counselor, Christopher Hadad, both reported that Father had a warm and loving relationship with his sons and a genuine interest in being involved in making decisions about their health, education and welfare. The court heard and observed the testimony of the Plaintiff Father and agrees with this conclusion. Mr. Witherspoon is seeking more time with his children but his current work schedule simply does not permit any additional parenting time at the present. The court notes that the Pendente Lite orders for custody and visitation were entered before the children were attending school. These orders permitted Mr. Witherspoon to spend more quality time with the children when they were younger. This time is not available now because the children are currently attending school and preschool.
The Guardian Ad Litem and the Family Relations Counselor both initially recommended that the parents share joint legal custody, primary residence with Mother. They both recommend that the parties make an effort to cooperate in making decisions regarding the children jointly. If the parties are unable to agree, the Mother would have final say in all decisions. The difficulty presented by this case stems from the history of domestic violence between the parents and the Mother's justifiable fear of the Father. The Guardian Ad Litem and the Family Relations Counselor both considered Ms. Micci's fears of Mr. Witherspoon to be valid and justified and the court agrees with this conclusion. The court CT Page 13280 finds the testimony of Ms. Micci regarding her fear of Mr. Witherspoon, and her failed attempts to communicate with him on simple day to day issues, to be credible.
The Family Relations Counselor, Christopher Hadad, was present for all the testimony heard at trial. As a result, he became aware that communication between the parents had not improved since the date of his report, and those additional incidents of domestic violence (without arrest or police involvement) had occurred since the date of his initial report. As a result, his recommendation was modified to sole custody to the Mother.
Regarding personal property issues, Mr. Witherspoon testified he was seeking the return of a fish tank, dishwasher and king size mattress. Mr. Witherspoon and his mother testified that she purchased the dishwasher and mattress when the couple moved into Ms. Micci's Watertown home. Ms. Micci testified that the dishwasher in the Watertown home was removed, the Sears dishwasher installed and the existing dishwasher installed in Mr. Witherspoon's former home. There was no disagreement that a former roommate of Mr. Witherspoon's abandoned the fish tank. However, the court finds the testimony of Ms. Micci that she replaced all the fish, pump and the gravel since the couples' separation, credible.
There is no dispute that the king-size mattress was purchased from 1-800-dial-a-mattress by Mr. Witherspoon's mother. The new mattress replaced the bloodstained mattress previously owned by Mr. Witherspoon. Ms. Micci had a queen size mattress when the couple moved in together which was given to her older daughter.
The parties both filed Financial Affidavits. Defendant Mother, introduced Defendant's Exhibits I J regarding the income of the parties. Despite considerable testimony by both Mother and Father on the issue of overtime, mandatory overtime, voluntary overtime, shift differential, holiday pay, straight overtime and 1 1/2 overtime, neither party introduced any evidence of the number of hours of overtime Mr. Witherspoon worked on a weekly, monthly or yearly basis. The Child Support Guideline Regulations 46b-215a-1 (11) (A) (ii) define "gross income" to include "hourly wages for regular, overtime, and additional employment up to a maximum of 52 total paid hours per week". This court, however, has no way of knowing how many hours of overtime are reflected on his Financial Affidavit and Defendant's Exhibit J. Mr. Witherspoon did advise the court that he was comfortable using the income reported on his Financial Affidavit (which includes some overtime) to compute Child Support. CT Page 13281
The Pendente Lite orders were entered before the minor children reached the school/preschool age and as a result deviated from the guidelines because the parents had shared custody. Given the fact that the oldest child is in school full time and the younger child is in day care during Father's present Wednesday through Friday and Wednesday through Saturday access, the parenting responsibilities of the Father are no longer substantially in excess of a normal visitation schedule. The standard for a "normal" visitation schedule is "typically two overnights on alternate weekends, alternate holidays, some vacation time; and other visits of short duration which may occasion an overnight stay during the week" Child Support Guidelines Preamble (h) (4) Shared physical Custody, p. viii. Father has the children from Wednesday at 6:30 p.m. until Friday at 6:30 p.m. (all school days) three weeks out of eight and Wednesday at 6:30 p.m. until Saturday at 6:30 p.m. five weeks out of the eight-week cycle. Given that the "normal" visitation schedule contemplates two full weekend days every other weekend, the court finds the current schedule does not meet the criteria established by the Child Support Guidelines as shared physical custody due to the Father's work schedule.
 ORDERS
After considering all of the statutory criteria set forth in General Statutes § 46b-84 as to support of a minor child, § 46b-215a-1
et. seq., Regs. Conn. State Agencies, as to child support, § 46b-62
as to counsel fees and § 46b-56 as to custody and visitation, together with applicable case law and the evidence presented here, the court hereby enters the following orders:
1. CUSTODY:
 a. Parenting Responsibility: The Mother and the Father shall have joint custody of the minor children. The minor children shall make their primary residence with the Mother. The Father shall have the following parenting responsibility for the minor children:
 i. On weeks that Father is working on Saturday: from Wednesday at 6:30 p.m. to Friday at 6:30 p.m. Drop off and pick up shall be at curbside at Mother's home;
 ii. On weeks that Father has Saturday off: from Wednesday at 6:30 p.m. to Saturday at 6:30 p.m.
iii. The Mother shall have parenting responsibility for the time not allocated to the Father. CT Page 13282
Mother shall be responsible for feeding the children dinner before the Father picks the children up at curbside. Father shall be responsible for feeding the children dinner before he drops them off at the end of his parenting time.
Each parent shall be responsible to make sure the children do their homework and attend school, sports and religious activities during their respective parenting time with the children.
b. Holiday Visitation:
i. Commencing with Veteran's Day 2002, with Father having the children for that holiday, the Father and Mother shall alternate the following holidays on a yearly basis. The parent with the holiday shall have the children only if he/she has the day off from work. If the parent who is scheduled for the holiday has to work then the holiday shall be deemed forfeited, the regular parenting schedule shall apply and no make up time shall be required. When it is the Father's holiday he shall pick the children up curbside at 9:00 a.m. and return the children (curbside drop off) to Mother's home at 7:00 p.m. Holiday and vacation visitation time shall supersede and take priority over the normal pattern of parenting time established in paragraph 1 (a) (i), 1 (a) (ii) and 1 (b) (ii):
 Labor Day (Mother 2003) Columbus Day (Father 2002) Veteran's Day (Mother 2002) Thanksgiving (Father 2002) New Year's Eve (Mother 2002) New Year's Day (Father 2003) Martin Luther King Day (Mother 2003) President's Day (Father 2003) Good Friday (Mother 2003) Easter Sunday (Father 2003) Memorial Day (Mother 2003) July 4th (Father 2003)
ii. The children shall spend Christmas Eve from noon until Christmas Day at 12:00 noon. with the Mother. The Father shall have the children from noon on CT Page 13283 Christmas Day until noon on December 26th.
 iii. The children shall spend Mother's Day and the Mother's birthday with the Mother and Father's Day and the Father's birthday with the Father.
c. Vacation:
 i. The Mother and Father shall each have two weeks summer vacation time during one of the summer months of June, July or August with 60 days advance written notice delivered by US Postal Service, Certified Mail, Return Receipt Requested to the other parent. If one parent's plans conflict with the plans of the other parent, then the parent who gave notice first shall have his/her first choice of vacation week (s).
 ii. The Mother and Father shall alternate the children's school vacations. The Mother shall have Christmas School vacation from Dec 26th at noon until New Years Day, 11:00 a.m., 2003. The Father shall have Christmas School vacation from Dec 26th at noon until New Years Eve, 11:00 a.m., 2003. The Father shall have the children for their Winter School vacation and the Mother shall have the children for the Spring School vacation in 2003. If the children's school district does not have both a winter and spring vacation the Father shall have the children's week off in 2003 and the Mother shall have the school vacation in 2004.
 d. The parties shall exert every reasonable effort to foster a feeling of affection between the children and the other party. Neither party shall do or say anything which may estrange the children from the other party nor injure the opinion of the children as to their mother or father, nor act in such a way as to hamper the free and natural development of the children's love and respect for the other party.
e. The parties shall seek the assistance of the PEACE Program, established by Beacon Behavioral Services LLC, Avon, CT; Kids First, established by Hiebel and Roeder, Family and Child Associates in Middletown, CT; or Connecticut Resource Group of Waterbury, CT (or a similar program) to facilitate the parent's attempts CT Page 13284 to peacefully confer with the other on all important matters pertaining to the children's health, education, welfare and upbringing. The Court finds that the difficulty in parental communication is primarily the result of the previous domestic violence by the Father against the Mother, and he shall be responsible for the payment of 80% of the costs associated with the PEACE Program, Kids First, Connecticut Resource Group or similar program. The Guardian Ad Litem shall confer with both parents and contact the program to make the initial appointment for the parties. Thereafter, the parties shall be responsible for scheduling appointments in compliance with the program requirements. If the parties are unable to establish parental communication with the assistance of one of the above programs, Father fails to attend or pay his 80% share of the costs associated with the program, or the parties cannot arrive at an agreement regarding any decisions involving the health, education or welfare of the minor children, the Mother shall make the final decision. Mother shall be required to make a good faith effort in attending, participating in and paying her 20% share of the program before she has the right to make any final decision.
 f. In the event of the illness or personal injury of the children, the first party to learn of such illness or injury shall notify the other immediately and each party shall keep the other informed at all times of the whereabouts of the children. For the purposes of this paragraph, the word "illness" shall mean any sickness or ailment, which requires the service of a physician. The word "injury" shall mean any injury, which requires the services of a physician. During any illness or accident, the Father shall have the rights of reasonable visitation to see the children in addition to the other rights provided herein. Notification shall be made promptly by the fastest method of communication available to the parent with the child or children.
g. Each of the parties shall keep the other informed of the whereabouts of the children while the children are with the Father or the Mother and outside the CT Page 13285 state of Connecticut. The information shall be provided in writing and shall contain the date of the trip, the location, name of hotel or overnight accommodations (if any) and a telephone number where the parent and child may be reached. The parent traveling with the children shall not have to provide a hotel room number to the other parent. During any trips if either parent has knowledge of any illness or accident or other circumstances seriously affecting the health or welfare of the children, he/she shall promptly notify the other party.
 h. Each of the parties shall furnish the other copies of any reports from third persons concerning health, education or welfare of the children if not provided to the other parent directly. Each parent has the responsibility to contact the children's schools, teachers, day care providers, coaches and team managers to secure the information for him/her self. If possible, each parent shall give the other forty-eight (48) hours advance notice of any special events involving the minor children including but not limited to plays, recitals, award ceremonies, banquets, sports activities, religious ceremonies, marriages, graduations, school conferences, sports meets and other ceremonies. Each party shall be responsible to transport the children to sports events, ceremonies, concerts and school functions that are scheduled during their parenting responsibility.
 i. The Father and Mother shall both have liberal telephone access to the children at all times and the children shall be free to contact the Father or Mother by telephone at all times.
 j. Both parents shall be deemed to have equal right of access to all of the children's school records and medical records at any time upon request.
k. Neither parent shall relocate with the minor children outside the state of Connecticut or to a location in Connecticut substantially further from the other parent's home as exists at the present time without 90 days advance written notice to the other parent and further order of the court. CT Page 13286
2. PERSONAL PROPERTY:
 a. The Defendant Mother shall be entitled to keep the dishwasher and fish tank as her property. The court finds that the dishwasher in Ms. Micci's home was exchanged for the one in Mr. Witherspoon's former home. The fish tank was abandoned property, which has been maintained and improved by expenditures made by Ms. Micci.
 b. The Plaintiff Father shall be entitled to the return of the king-size bed purchased for the couple by his mother. He shall remove the bedding from Ms. Micci's home within 45 days of the date of this judgement or he will forfeit his right to the property. The Plaintiff shall be accompanied by a police officer when removing the mattress and shall give the Defendant 48 hours advance notice of the time and date he will remove the mattress.
3. EDUCATIONAL SUPPORT:
Pursuant to Public Act #02-128 An Act Concerning Educational Support,
and the Defendant's request in her Amended Proposed Orders, the court shall retain jurisdiction over the parents contribution towards the payment of the children's higher education.
4. CHILD SUPPORT:
Based on the income reflected on the parties Financial Affidavits the Plaintiff Father shall pay the Defendant Mother the sum of $208.00 per week and 36% of the cost of daycare and/or all-day kindergarten costs. The parties shall divide unreimbursed medical expenses after the Defendant pays the first $100 with the remainder being divided with the Plaintiff paying 36% and the Defendant paying 64%.
5. ATTORNEYS FEES:
a. The legal fees for the Guardian Ad Litem, Attorney Jeffrey Weisman, shall be divided with the Plaintiff Father paying 75% and the Defendant Mother, paying 25% of the outstanding bill in the approximate amount of $4,950.00 which the court finds reasonable. CT Page 13287
 b. The court has ordered the Plaintiff Father to pay 80% of the cost of the coparenting program ordered in paragraph 1 (e) above and 75% of the legal fees for the Guardian Ad Litem. Given those expenses the court is not awarding attorneys fees to the Defendant Mother.
6. JURISDICTION:
The Regional Family Trial Docket shall retain jurisdiction over this case for a period of one year from the date of judgement and any motions regarding custody and/or visitation shall be filed with the Regional Family Trial Docket.
By the Court,
Holly Abery-Wetstone, Presiding Judge CT Page 13288